EVIDENTIARY RULING
Although former Commissioner James J. Booker, in an Order filed 20 April 1995, instructed plaintiffs to submit within thirty (30) days "affidavits with any necessary supporting documentation setting forth their allegations and claims as to the specific amount of damages," plaintiff's submission was not received by the Commission until 7 August 1995, over 100 days after the filing of the Commission's Order. No documentation of a copy date-stamped by the Commission was received nor was there a Federal Express receipt or copy thereof received by the Commission to document plaintiff's earlier claimed submission. Further, defendants, while stipulating to the authenticity of records and that the medical doctors and chiropractor would testify according to their records, did not stipulate that these documents could become a part of the evidentiary record nor that they were properly before the Full Commission. Therefore, these documents are not allowed into evidence.
Nevertheless, since the plaintiffs initially presented evidence of damages when they presented evidence on the issue of liability before Deputy Commissioner Chapman, that record is sufficient for the Full Commission to base this Decision and Order.
* * * * * * * * * * * *
The parties entered into the following stipulations:
STIPULATIONS
1. The date of the alleged negligent act giving rise to the claim was September 19, 1988.
2. The employee of the State involved was Trooper Carl Sanborn who was an employee of the North Carolina Highway Patrol, an agency of the state of North Carolina. Said employee was acting at the time within the scope of his employment.
In addition, the following documents were stipulated into evidence:
1. A two-page accident report dated September 19, 1988.
2. Ten pages of medical records, statements and a summation for Tina Minks.
3. Thirty-six pages of medical records, statements and a summation for Peter J. Minks, III.
Based upon all of the competent evidence in the record, the undersigned makes the following
FINDINGS OF FACT
1. On September 19, 1988 Carl Sanborn was employed by defendant as a highway patrolman, and he had been assigned to the area of Pamilco and Craven Counties since 1983. The patrol vehicle assigned to him at this time was a blue marked 1988 Mustang. Between 5:30 and 6 o'clock p.m. on this date he was patrolling Highway 70, a four-lane divided highway which ran between New Bern and Havelock. The highway had a grass median between the east and west bound lanes plus similar grassy areas between the highway and the service roads which ran parallel to it on both sides.
2. Trooper Sanborn pulled a driver over for speeding in the west bound lanes of Highway 70 a short distance east of Riverdale. As he was speaking with the driver, an off-duty Havelock policeman whom he knew pulled up behind them and told Trooper Sanborn that he had observed what appeared to be a drunk driver headed west on the highway. He gave a description of the car. Trooper Sanborn had not seen it because his attention had been focused on the driver he had pulled. He then returned to his patrol car, pulled out onto the highway and began accelerating in order to catch up with the car Officer VanVelkenburg had described. The blue light on his car had been activated before he pulled the speeding car, and he left it operating.
3. Trooper Sanborn, who stayed in the left lane, passed several vehicles and then had an open road ahead of him for some distance, but he could see cars approximately one-half mile down the road. He continued to accelerate until he was going about 90 miles an hour. Suddenly he was aware of a car which had pulled from the east-bound lanes into the cross-over roadway between the east-bound and west-bound lanes.
4. The car Trooper Sanborn observed was a 1976 Chrysler New Yorker being driven by Tina Minks eastwardly on Highway 70 towards her house which was off of the service road parallel to the west-bound lanes of the highway. When Mrs. Minks pulled into the cross-over lane at the intersection where she had to cross the west-bound lanes, she noted that traffic was approaching the intersection but did not observe that the patrol car driven by Trooper Sanborn was traveling at a high rate of speed or that its blue light was flashing. The highway was straight, the weather was clear, and it was still daylight.
5. Mrs. Minks pulled her car onto the highway. It appeared to Trooper Sanborn that the car paused as though it might stop, so he steered his car to the right, but the car then continued across the highway. He slammed on brakes and began skidding towards the intersection and to the right. Although the Minks vehicle was about half way off of the highway at the time of the collision, the patrol car struck it behind the back door and knocked it off of the highway. Mrs. Minks, her baby and Trooper Sanborn were all injured as a result of the accident.
6. As a highway patrolman, Trooper Sanborn had a duty to apprehend drunk drivers and remove them from the highways. he had reasonable grounds on this occasion to believe that there was a drunk driver further west on Highway 70, and he was in pursuit of that driver when the accident in question occurred. It was necessary for him to exceed the speed limit in order to catch up with the car under suspicion. However, Trooper Sanborn also had a duty to other motorists to exercise due care for their safety as he was pursuing this car. He did not act as a reasonably prudent person discharging official duties would have acted under
7. In view of the above circumstances, Trooper Sanborn breached his duty to exercise ordinary care when he failed to slow down upon seeing Tina Minks' vehicle positioning itself to pull out into his lane of traffic.
8. As a proximate result of the breach of Trooper Sanborn's duty to exercise ordinary care, it was reasonably foreseeable that a collision would occur involving the vehicle Tina Minks was driving and his vehicle.
9. There was negligence on the part of Trooper Sanborn who was acting within the scope of his employment which was the proximate cause of the injury of Tina Minks and her infant son, Peter J. Minks, III.
10. Tina Minks was not contributorily negligent for the injuries which she or her son sustained as a result of the collision.
11. The reasonable value of the pain and suffering which the minor, Peter J. Minks, III, endured as a result of the negligence Trooper Sanborn is $10,000.
12. The reasonable value of the economic loss sustained by Tina Minks and the reasonable value of the pain and suffering which Tina Minks endured, as a result of the negligence of Trooper Sanborn is $7,500.
13. The reasonable value of the economic loss sustained by Peter J. Minks, II and the mental anguish suffered by Peter J. Minks, II, including the loss of society, the companionship, and comfort of Mrs. Minks, as a result of the negligence of Trooper Sanborn is $5,000.
14. Assuming, arguendo, that the documents submitted after the designated date for acceptance are nevertheless considered as part of the evidentiary record, the findings of fact as to damages would remain the same in view of the weight given by the Commission to the chiropractic evidence which was not rendered to a reasonable degree of medical certainty regarding spinal nerve damage to the "visceral organs, such as the lungs" resulting in an asthmatic condition.
15. The Industrial Commission has been placed on notice as of 14 June 1990 of a subrogation claim for $330.10 by the North Carolina Medical Assistance Program (Medicaid) for hospital or medical benefits which Tina Minks received.
* * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. The negligence of Trooper Sanborn in breaching his duty to exercise ordinary care when he failed to slow down upon seeing Tina Minks' vehicle being positioned to pull out into his lane of traffic, proximately caused injuries to Tina Minks, Peter J. Minks, III, and Peter J. Minks, II.
2. Mrs. Minks was not contributorily negligent for the injuries which she and her minor child, Peter J. Minks, III, sustained. N.C. Gen. Stat. § 143-291 et seq.
3. As a result of the negligence on the part of Trooper Sanborn, defendant's named employee, while acting within the scope of his employment which was the proximate cause of the injuries sustained by Tina Minks, Peter J. Minks, II, and Peter J. Minks, III, the State is liable to Tina Minks for damages in the amount of $7,500; to Peter J. Minks, II, $5,000; and to Peter J. Minks, III, minor child, $10,000.
4. The amount set forth above recoverable by Tina Minks is subject to the subrogation claim for $330.10 by the North Carolina Medical Assistance Program (Medicaid) for hospital or medical benefits which she received. N.C. Gen. Stat. § 108A-57 (1981).
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
ORDER
1. The State shall pay Tina Minks the sum of $7,500, subject to the state's lien of $330.10, Peter J. Minks, II the sum $5,000; and to the Clerk of Superior Court of Craven County, or to a general guardian to be appointed hereafter, the sum $10,000 for the damages to minor Peter J. Minks, III.
2. Pursuant to plaintiff's motion, to which objection was not made by the defendant, defendant shall pay the costs of this matter, including $9,420 in attorney fees. N.C. Gen. Stat. §143-291.2 and N.C. Gen. Stat. § 6-21.1.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________ J. RANDOLPH WARD COMMISSIONER